Case No. 17-1058 at Elm, Local 58, International Brotherhood of Michigan Workers IBEW AFL-CIO Petition vs. National Labor Relations Board Mr. Federer for the petitioner, Mr. Hickson for the respondent Petition vs. National Labor Relations Board May it please the Court, Robert Federer Miller Cohen on behalf of IBEW Local 58, and I reserve two minutes of my time for rebuttal. And I'd like to start by giving a practical perspective from my client on the necessity for this policy. Local 58 has a moral and legal obligation to protect its members from fraud. A fraudulent resignation can cause irreparable harm to its members and to the institution. Every business in America understands the risk of identity fraud. Any person that has dealt with a business that is a customer, or in any way dealt with a business, knows they have to verify their identity in some way. It is not burdensome. People understand that this protection is necessary. There's no movement in this country to change having to verify your identity dealing with businesses. Can I ask, does any other union in the country have this policy? Your Honor, if I only had that knowledge of what every policy, every union... Do you know of any other union that has the policy? I know of some unions that have similar policies. Do they have a combination of in-person with picture ID and with written request? I'm reluctant to give the Board my knowledge of what policies may be for purposes of enforcement. I don't mind if you give the Board, but I'm asking you to give me. Yeah, I know of some that have actual in-person requirements. I know some that have requirements to verify the identification in one way or the other. With a picture ID? With a picture ID? Yeah, isn't that what's required here? Picture ID. Well, I don't mean to attack the premise, but a picture ID is not required because it allows for other arrangements to be made. We'll get to that question next, but it's at least the basic policy to require picture ID, written request in person, right? And then you can make a request for something else, but that's the basic policy, right? Does anybody else have that? I can't speak to that. I don't know. I typically know what my clients have, and outside of that, I would have no reason to know on any broad basis what any local union may have. Enforcing them to drive two hours each way, that's a hurdle to resignation. It seems beyond what the Board's precedents suggest is permissible and the Supreme Court's precedents suggest is permissible. Judge Kavanaugh, I'm glad you brought that up because what the Board has argued is that there's a requirement to show up in person at the hall, and this policy has to be read in its totality. So this piggybacks on Chief Judge Garland's point, too, which is that that's the basic policy, and you're saying, well, you don't have to go through the basic policy of the photo ID and the in person, which is true, but the problem in this case, which was easily avoidable, so all this litigation was easily avoidable, is you could have spelled out the undue hardship conditions more clearly to avoid this whole morass. And what they fear, what the Board fears, obviously, is that the undue hardship is uncertain, and therefore it's going to chill people from exercising their statutory right to resign without hurdles. Right. The context of this policy is because of the nature of this local union, there are hundreds or thousands of its members passing through the hall on a regular basis because that's how they get their job assignments. That's how they pay their working dues. That's where they go for meetings and events. For most of the members of this local appearing at the local hall, they're there on a regular basis. But if they're going to resign, they might not want to appear. That's NLRB's argument. That would be the exact place you wouldn't want to go. Right. Whether you're a union member or not, you still get your job through the hall. I see. I see. I see. We can't stop referring non-members out. I got it. I got it. So membership, coming to the hall is not dependent on membership, and many of them do. Do you have to come to the hall to get your job? It depends on the job, but usually if you're out of work and you want what they call a short call, like less than a two-week job, then, yes, you've got to come to the hall to get it because it's short. Right. If you're there, they grab you and you go. So you still have to drive the two hours. You still have to drive the two hours. This is for the vast majority of their members. They have some members that are factory workers, that are public employees, about 500 out of about 5,000 right now, don't work in the construction trades, as Mr. Green didn't. And they don't have to come to the hall as regularly, but they didn't want to have a mishmash of different policies. But according to the board's logic, I want to give you a scenario. About 90% of its members have a dues-funded pension and life insurance benefit, requires 20 years of continuous membership. The board says the law requires that if a person states that I'm Robert Fetter on the phone or leaves a voicemail or sends a note and says I want to resign, the local must immediately recognize. That's not their position. They say you can require it in writing. Okay. So they send a note. And they get a note in the mail or stuck on the window or however it may be, and the dues stop coming out. The person realizes it a couple weeks later, and they get their check. When they get around to it, they check with their steward, and they say why aren't dues coming out? They say because you're not a member, you've got to sign this new card. They sign the card. Dues start coming out again in the future. Fast forward 10 years, they retire. They apply for their pension. It's denied because they had a break in membership. Well, under those circumstances, I get the point about somebody who's been doing this for years, but under those circumstances, they've been fraudulently removed from the record. Why aren't both the union and the employer required to fix that problem for those two weeks? That is, since the person hasn't taken it out of the last two weeks, take it out of the next two weeks. Why is it any different than if somebody steals your paycheck before it gets to you from the company's treasurer? That doesn't absolve the company's treasurer of having to give you a paycheck. Right. We're concerned that people won't give it that much thought at the time, because people don't think of their – I mean, they think of their overall pension that they get that is collectively bargained between the employer and the union. They may not necessarily be thinking about their dues-funded pension, which is a separate pension that comes from their dues money. They may not be thinking about that at the time or take the effort to go around and pay back the dues and recognize that it's even a problem. They may not even know they have a dues-funded pension, to be quite honest with you. Not all members even know that. So – and it also casts aside this issue of election. They get a petition. They get some writing that says these 30 members no longer want to be members of the IBEW. They get that the day before an election. But isn't the easy way to resolve this concern, which I acknowledge is a legitimate concern and a good practice to confirm, is to, when you get the written letter, call the person, which is, in fact, what did happen. Right, which shows that there's no intent in this. And once you – right, I understand that. And once you call the person, then you've got the written letter, and you've confirmed by calling the number you have on file for the person, and that should largely, not entirely perhaps, but largely avoid the fraud potential. And that's what they did in this case. I understand, but why not spell that out? But we may not be able to have an accurate phone number for the particular member. We may not even have an accurate address for the member. And so then what happens in situations when we don't? The problem is this dreaming up hypotheticals to have a policy that's, in the meantime, going to potentially deter people from resigning, which is what the board precedent in the Supreme Court has said you can't do. And I don't see it deterring. And here's why. Here's how it would work in practice. And we didn't have much of a chance to apply it in practice other than the one occasion. But at any rate, somebody calls and they said, I want to resign. They said, can you come down to the hall? They said, no, I don't want to come down to the hall. Okay, can you verify your Social Security number that we have on file? Sure. Done. That is easier than sending a writing to a particular union officer, which everybody agrees is not a violation of the Act. That does not chill people from calling the telephone company. That doesn't chill people from, I mean, this allows people to contact the hall and make other arrangements. The goal here is simply, and I'll just finish and then I'll conclude, is simply to verify their identity. So I think the problem is not that these alternatives wouldn't be okay, at least as I read the Board's decision. It's not clear from the it is further resolved paragraph that they will be okay. It's not clear who is going to decide whether there's an undue hardship. It's not clear who is going to decide what other arrangements. In your brief, you suggest it's totally up to the union member, but you can't really mean that, do you? You don't mean whatever the union member proposes will be sufficient for the union. No, that's not what the record says. And that's not what you mean. So spelling out a series of alternatives that would be just as good for your purposes and that would not be an obstacle to somebody who actually wants to resign would be permissible. The problem here is the uncertainty and we have to defer to the Board's reading of this as something that a reasonable member of the union might think leaves it totally in the union's hands rather than in the member's hands. Yeah, I think there's no way to read this that whether there's an undue hardship is not up to the subjective view of the member because it says any member that feels that appearing at the union hall. So it is their feeling, which the union has no idea what they're feeling. It is up to them. It's the may make other arrangements. You agree that the other arrangements are not totally up to the member, right? Right, and the make any other arrangements goes back to the any member because it's before the and, and the member may make other arrangements to verify the identification of the member contacting the union hall. But you're not going to leave it to the member to say this is what I'm going to do and that's enough. Right, and what the business manager had testified at the hearing was it's any reasonable method as long as they verify their ID, and that's his testimony. That's what we have in the record. I guess I still don't know what any reasonable, even I don't know what any reasonable. Well, any reasonable method means anything that's effective to give us, and the way that he phrased it is there's a death benefit attached to this. And they had somebody that died building an arena not too long ago. He does not want to look at that person's spouse and say you are denied this health insurance and I didn't make reasonable efforts to determine that it was really their identity or that person who died. Would it not be possible for the union to list what the alternative arrangements would be? I mean, it can't be too long of a list that would satisfy you. So if you made a list that did satisfy you, which didn't include having to show up or which didn't include a picture ID. It's not in the record, but I believe what was in the union's mind is they didn't want to limit it. They didn't want to limit it. If they had a reasonable way that they could verify their identity, they didn't want to limit that. Well, you could list a couple and say, and we'll consider other alternatives too, in which case this litigation wouldn't have happened. Oh, it may still have happened. Well, if you said in writing followed by a phone call is good enough, then this litigation wouldn't have happened. As an example. I'm not sure that this litigation would have happened. We may not have been here. We may not have been this far. I understand your broader point. I get it. I get it. But I understand that. But this is a facial challenge. Listing examples as to what other arrangements would be acceptable, I don't think that's subject to a facial challenge. There might be an as applied if they apply it in a bad way at some point, which they haven't, and I don't think they have any intent to do so. But that, I think, would be left to going beyond the face of – if there are other arrangements that are acceptable and that would be legal, then the policy as a whole is acceptable. What's the consequence to the union if we affirm but note that an alternative along the lines we just discussed, that is one in which the union describes an additional set of options, would be acceptable? In a way, I wonder why we're here. That is why that wasn't resolved before you got here. But other than that, what's the consequence to the union of something like that? The consequence to the union, well, I mean, they would have to post a notice saying they violated the act, which I don't think they have. But the consequence of that is – I'm trying to think of how that comes out in an enforceability way. But saying that the policy is otherwise okay, just to make sure I understand, if you had cited some examples that said including but not limited to, you know, you can have a notarized letter, you can verify over the phone information we have on file, or whatever it may be, whatever that list may be, that that would make this legal? I don't know what the consequence would be. Well, the majority opinion suggests that there may be alternatives, but it's also clear from the majority there has to be a minimal impact. So they say you have to send a letter. And if everybody doesn't have an iPhone or some website you can contact them with, then you're left with the mails. So if you've got a letter saying I want to resign the union effective today at midnight, there's no time for you to get back to me or you can't reach me on the telephone, so my benefits are gone. So, I mean, the union distributes things to its members. What I'm thinking of is anytime I try to unsubscribe to something, I get all these messages about, are you sure you really want to unsubscribe? We'll give you another 30 days free service or whatever. But I gather, I mean, in a working context, that's not going to be possible for many of the members of the union. What's not going to be possible? What part of that? Well, a lot of texting and emailing. Yeah, this local does not communicate via, I mean, they have some members that have given emails, and they may communicate, but they communicate, if they're going to communicate broadly, it's through old-fashioned newsletters that they mail out. And that's not communication back that verifies it. I mean, they send it out to the addresses they have on file. But presumably if there's a dues check-off, that means there's a wage payment, and the wage payment is made somehow, either somebody has to pick it up from somewhere, or, right? There must be an address. It's direct deposited largely now. And don't forget, because of the nature of how many of these members work, they may work for 25 employers a year. They jump from employer, I mean, it's construction site to construction site to construction site to construction site. Some have stable core group of electricians that they keep, but many of them work from employer to employer to employer. So relying on employers is often not very accurate. And even finding who their employer is at any given time is always not super easy. Okay. Further questions? Thank you. Thank you, Your Honor. I'll hear from the NLRB. Good morning, Your Honors. May it please the Court, Michael Hickson for the NLRB. The Board here reasonably found that the union's policy facially violates Section 8B1A of the Act. The policy first constitutes an unlawful restriction because, as the Board found, it imposes a significant burden on employees' exercise of their Section 7 rights to resign their union membership or to revoke their due checkoff authorizations. The policy, as has been discussed, creates a substantial obstacle by directing any member that desires to exercise their statutory rights to resign or revoke, telling them that they must do so in person at the union hall and show picture identification. Can you suggest a lesser requirement that satisfies the Act, but at the same time satisfies the union's concern that it not be defrauded into dropping somebody, either in a way that would change an election by changing the membership or in a way that would hurt a member by affecting their pension? Your Honor, I can't here give you another example that I can tell the Court definitively would pass muster before the Board. Well, you're not the Board. The Board said in writing was okay. Yes, Your Honor. Yes, Your Honor. The Board specifically affirmed here. No, the Board said, I'm sorry to interrupt, but the Board said a union can require that the resignation be communicated in writing. Yes, Your Honor. Yes, Your Honor. The Board here specifically affirmed its prior precedent, that it's acceptable for a union to require its members to put a resignation request in writing and designate it to a particular union officer. So the question is, I send in a slew of letters, all typed in different fonts, et cetera, all handwritten in different ways, telling the union that the following 50 members are resigning. Is the union just supposed to accept that? Your Honor, I don't know. I take the point, and I understand that that case would present interesting questions about how the union were to respond in that scenario. What did the Board say could be done in addition to sending a letter? Your Honor, well, what is affirmed here is that it's acceptable for the union to require members to put it in writing, the request in writing, and designate it to a particular union officer. I'm using letter as a shorthand for the reason. Certainly, Your Honor. Yes, I understand. Well, the thing is, Your Honor, that the Board here is confronted with the facts of this case and with the language of this policy, which the union drafted. Well, it isn't the answer that the union, maybe I'm wrong, but the union in the circumstance like Judge Rogers describes, I thought, could have a policy, which this union did, of when you get a letter like that, you call the number you have, you do something to make sure that it's not just some rabble-rouser impersonating the union member and resigning in that way. And so the union and the Board would have no, obviously, no problem with that, I assume. How could it? The union would be the one making the call to confirm. Right. Your Honor, I mean. It wouldn't be any burden on the union member. Well, just to be clear, Your Honor, in candor, I can't say that there is a Board case that has confronted those facts. I understand. I'm just saying that what happened in this case was a lot of oddities about this case. The one thing that's odd is that what happened seems perfectly appropriate, which is send in a letter, and then there was a phone call to confirm, and all was well. Right. Well, there's no dispute in this case, Your Honor, as to the actual facts of how things played out with Mr. Green, although we don't know, you know, that Mr. Green was ever aware of the policy, of course, and perhaps if he had been aware of the policy, he may have been discouraged from ever pursuing his right to resign. And that's what the Board is concerned with here. It's a facial challenge. Yeah, no, I understand that, and I get all that. I'm just talking about the hypothetical, which I think was the question Judge Rogers asked, and I'm concerned about, too, is what can a union do to avoid the fraud that your opposing counsel rightly raises as a concern? Require it in writing and call to confirm. I understand, Your Honor. The thing is that I can't tell the union and the Board can't tell the union, you know, what it is that it can do. I mean, the Board generally stays out of the union's internal affairs. That's part of the policy underlying the act in Section 8.1a. You know, lawyers normally before us have to answer hypotheticals. If the Board attorney's position is that they can never answer a hypothetical, there may be no use to having the Board attorney argue cases in front of us. So here's my hypothetical. Imagine they required on the writing that you put a phone number, address, or some other way for the union to contact them to confirm. Do you think that that would be impeding the National Labor Relations Act? Would it damage the purpose of the act and, therefore, no balancing is required, or do you think that would be okay? Your Honor, I want to make sure I understand the question. Are you saying if the union had a policy that said, in order to resign, you send us a writing, and when, you know— And the writing include on it— I'm sorry? And the writing include on it a way for us to contact you, a telephone, an address, an address, et cetera, an email address. Would that, in your view, be an unfair labor practice? No, Your Honor. Excuse me. No, Your Honor. It would not. And that's why we attempted to convey in our brief that contrary to some of the claims that the union makes— Are you sure about that? I was going to say. You might have just conceded something that you're not authorized to concede, contrary to the premise of the question. They can require the address and phone number. I just want to make sure. Your Honor, I am answering the direction of Chief Judge Garland to answer his hypothetical. I'm speaking for myself as counsel. That is my view of the act. Well, let me ask you a quick question— That's all I'm asking. —if you know from the record and your experience. If I want to join the union, do I normally have to fill out a piece of paper? My name, maybe my address? Normally, in my general experience, yes, there is some kind of paper that has to be filled out. The record here, you know, as to the level of variation that may exist among— No, I understand there are all kinds of variations. But, of course, my address may change, my telephone number may change, my name may change, so there may not be any duty to keep that up to date, necessarily. So the problem is you get these 50 letters and you're trying to figure out, A, are these people members? B, are they members in good standing? C, how do we confirm this? So one argument is, in response to Chief Judge Garland's point, well, if you make them a burden of putting in all this information, filling out a form, basically, that's also in hindering what ought to be a right just to say, I resign. And I guess what the union was saying here is you're in a union hall all the time, so you resign, you show us an ID, your driver's license, end of discussion. But the board says that's more than minimally required. And I think we're trying to parse sort of understanding what does the board think is permissible where it's saying the mere maintenance of a policy, even where it has this open-ended alternative, is too burdensome. And the only case they have before them is, I think, Mr. Reed. Yes, I understand, Your Honor. I just wanted to make sure, Your Honor, it's clear that, as my colleague here conceded, that many of the members do have reason to go to the hall, apparently, although I don't think this is in the record, but it's common that in the construction industry, many members have reason to frequent the union hall. However, there are, I think you said, about 500 members who are not in the construction trade, including, as just an example, Mr. Green here, who work at factories, et cetera, and who would not have reason to go to the hall and who may live, for example, two hours away, as Mr. Green did. Again, I appreciate the court's concerns, and I understand that the board did not rest its decision on a challenge to the legitimacy or the earnestness of the union's motives. However, it is our view that the law makes clear that once a policy impairs, a union rule or policy impairs a policy Congress has embedded in the labor laws, which includes any rule that amounts to a restriction on the right to resign, then that policy or rule is invalid and unlawful regardless of the motives, regardless of the purposes. And as I was saying before, it doesn't require us to determine whether the board's view of impairment is reasonable. I'm sorry, the board's view of what? Impairment is reasonable. And doesn't the labor laws also require fair dealing by the unions with their members? And there must be some ability of the union to determine whether the person who claims they're a member really is a member. So this question of how far you have to go to impair is a question we have to decide. Well, Your Honor, respectfully, I think the question the court has to decide is whether the board reasonably found that this policy. Yes, yes, yes, yes. And so, Your Honor, it's my view and the board's position here before you that this policy, with this particular requirements, went too far. It poses a substantial burden on the members in the exercise of their fundamental statutory rights that is inconsistent with the Act. Further questions? Okay, is there any time left? We'll give you another minute. I'd like to make two quick points. First is the most relevant quote from the Supreme Court that's relevant to this issue that we must all adhere to and not forget to, and that's from the Schofield case, which is the inquiry must therefore focus on the legitimacy of the union interest vindicated by the rule and the extent to which any policy of the Act may be violated. I thought that subsequent cases, the court held and the boards held that if there's impairment, then you don't do a balancing, and I thought you agreed with that view. No. It's restriction on the ability to resign, that you don't apply the balancing. So if you have a window period, so you can only resign 10 days out of the year, or you can't resign during a strike, or we fine you because of a strike. But manner cases that talk about how to resign, like this, you've got to send in a writing or whatever, those are not per se. What about Felter says you can't have a specific form for revocation of the dues authorization? Now, in that case, they found there was no legitimate interest. Now, that was a dues deduction case, not a resignation, but I think they're the same. That was a particular form that you could only get at the union hall, and they said that, you know, you can informally, because that was something that was in the collective bargaining agreement. That was not an internal union rule. That was a CBA, and they said, you know, the employer, rather than making everybody go down to the union hall, could just informally verify everybody's identity. And so with Felter, I mean, that's what we're attempting to do, is to informally verify everybody's identity. Now, because it's a rule, there's no employer involved, and given the nature of the work here, that is difficult. So the Schofield rule that set out, the board has to recognize that. They can't say, as he just did, that we're just disregard the legitimate interests of the union. Just disregard. And that's what the board did. They did not follow the Schofield rule, which is still good law, which we set out in our brief in perhaps excruciating detail. What about the decision in the Neufeld-Porsche-Audi case? Yeah, so in Neufeld— I'm just going to read. Thus, although the union rule was adopted properly and reflected a legitimate union interest, it was unlawful because it impaired the principle embodied in Section 7. Right. And that was a total restriction on resigning. There was a period of time where they were not allowed to resign. I believe it was a 60-day window period. Oh, no, that's Balmer. There was some sort of period of time where they could not resign. And we don't dispute that, that that's the law, that that period of time— we can't have a total ban on the ability of somebody to resign, and that's not even coming close to what we're doing here. And I'll say, just to have a differing opinion on what this court is or what this court's going to do, this is the D.C. Circuit Court. This is a confusing issue legally. The cases are not entirely consistent from the board over the years. How they've dealt with it has not been consistent. And having direction that's beyond just looking at this policy and coming up with a test— That's why I asked you whether there were any other unions with anything because we haven't been able to find any cases with anything like this. Yeah, members don't usually file charges over these issues. I mean, they have rules. The UAW went through a period of time where their rules were challenged. That's where the Sixth Circuit had ruled and the board had ruled twice on their writing requirement that it sent directly to the local's financial secretary. But where these rules exist, you know, listen, there's not a ton of people that are out there resigning, number one. Two, those that do don't have a problem with these little manner rules. And three, the only ones that I know that have filed these are the National Right to Work Foundation, not individual members, or they're on behalf of individual members. Well, they would be able to bring cases along the way anyway, so I just wonder why we're not seeing more. Because it's generally not viewed as a problem from membership. All right, we'll take the matter under submission. Thank you. Thank you.
judges: Garland, Rogers, Kavanaugh